UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT C...
DISTRICT OF VE.
FILED

2011 JAN 11  AM I.

BY _____
DEPUTY CLERK

| | |
|---|---|
| BETH E. ROWLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 5:10-cv-130 |
| | ) |
| UHS of SUTTON, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
(Doc. 23)

This matter came before the court on December 15, 2010 for oral argument on the
motion by UHS of Sutton, Inc. for partial summary judgment on Count II of the
Complaint filed by Beth E. Rowley. Count II alleges that Defendant's actions in
terminating Plaintiff from her job, while she was on medical leave, violated Vermont's
Parental and Family Leave Act ("PFLA"), 21 V.S.A. §§ 470-474. Defendant argues that
Plaintiff does not qualify as an "employee" under the PFLA, and therefore summary
judgment must be granted in its favor with regard to Plaintiff's PFLA claim. Plaintiff
opposes Defendant's motion. The parties completed their post-hearing filings on
December 17, 2010.

Plaintiff is represented by Norman E. Watts, Jr., Esq. Defendant is represented by
Sonya L. Sibold, Esq.

### I.  Undisputed Facts.

On March 4, 2009, Plaintiff began her employment as Director of Client Relations
at King George School (the "School"),[1] a boarding school located in Sutton, Vermont.

_____

[1] Defendant owns King George School.

During her employment, she became pregnant.  On January 12, 2010, Plaintiff requested twelve weeks of leave under the federal Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA").

In a letter dated January 14, 2010, Jay Ramsey, the School's Director of Human Resources and Risk Management, informed Plaintiff that she did not meet the qualifications for FMLA protected leave.  He advised Plaintiff that the School would treat her leave request as one for "medical leave" in accordance with the School's non-FMLA-qualifying medical leave policy, and that Plaintiff's "request for a *medical leave* [was] approved effective 1/15/2010 through 4/9/2010."[2]  (Doc. 23-5.)  The letter stated that Plaintiff's medical leave would be unpaid once she exhausted her hours of accrued leave, consisting of paid time off ("PTO") and earned leave balance ("ELB").[3]  It further stated that Plaintiff's health benefit premiums would continue to be withheld from her paycheck until her leave became unpaid, at which time she would need to pay those premiums directly to Defendant's Corporate Benefits Department.  In the letter, Mr. Ramsey advised Plaintiff that because her leave was not protected by the FMLA, the School was not required to re-employ her or offer her a similar position when she returned to work.

On January 15, 2010, Mr. Ramsey informed Plaintiff by e-mail that, as of January 30, 2010, her ELB balance would be 12.96 hours and her PTO balance would be 16

---

[2] In her supplemental memorandum, Plaintiff provides an unsigned copy of this letter which states that her request for medical leave was approved "effective 2/1/2010 through 4/21/2010." (Doc. 36-1.)  She does not, however, contend that this unsigned letter creates a disputed issue of material fact.

[3] Pursuant to the School's written policy, PTO "combines a benefit eligible employee's vacation, holiday and sick time accruals into one program."  ELB "paid time is intended to provide compensation for instances of short-term disability." (Doc. 23-9 ¶ II.)  The School's policy governing PTO and ELB leave provides that, "[a]ll accruals will stop at the end of the pay period after an approved leave of absence begins." (Doc. 23-9 at 3.)  Plaintiff accrued eight hours of PTO per pay period and 1.54 hours of ELB per pay period. (Doc. 23-9 at 7.)

hours.  In that same e-mail, he instructed Plaintiff to claim those accrued leave balances as follows:

> On the timesheet for 1/17 – 1/30 you should claim in the first week 16 hours of PTO and 12.96 hours of ELB.  The remaining 11.04 hours will be unpaid in the first week as will all of the second week and the rest of the leave because you don't accrue PTO or ELB while you are on leave.

(Doc. 23-1 ¶ 9; Doc. 23-6.)

Plaintiff began her leave of absence on January 18, 2010.  While Plaintiff was on leave, Mr. Ramsey orally informed her on February 23, 2010, and in writing on March 1, 2010, that her position would be eliminated effective March 9, 2010.

In May 2010, Plaintiff filed a civil action against Defendant in Vermont state court, which has been removed to this court.  Count I of Plaintiff's Complaint alleges a violation of the Vermont Fair Employment Practices Act for gender discrimination related to Plaintiff's pregnancy.  Count II, on which Defendant seeks summary judgment, alleges a violation of the PFLA.  Plaintiff seeks compensatory and punitive damages.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is genuine "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (citation omitted).

The moving party bears the burden of showing that it is entitled to summary judgment. *Huminski v. Corsones*, 386 F.3d 116, 132 (2d Cir. 2004).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of

3

the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.
2008) (citations omitted). The burden then shifts to the nonmovant to put forth
admissible evidence to create a genuine issue of material fact for trial. *Id.* A court must
draw all "reasonable inferences" in the nonmovant's favor, and construe all of the facts in
the light most favorable to the nonmovant. *Giordano v. Market Am., Inc.,* 599 F.3d 87,
93 (2d Cir. 2010). "[T]he plain language of Rule 56(c) mandates the entry of summary
judgment, after adequate time for discovery and upon motion, against a party who fails to
make a showing sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986).

In this case, federal jurisdiction is based on diversity of citizenship. Accordingly,
the court applies the substantive law of Vermont, the forum state. *See Erie R.R. Co. v.
Tompkins*, 304 U.S. 64, 78 (1938); *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443
(2d Cir. 2005).

## B. Vermont's Parental and Family Leave Act.

Vermont's PFLA permits employees to take leave from employment "for the birth
or adoption of a child or to care for a seriously ill family member[.]" 21 V.S.A. § 470(b).
Section 472 provides that, "[d]uring any 12-month period, an employee shall be entitled
to take unpaid leave for a period not to exceed 12 weeks: (1) for parental leave, during
the employee's pregnancy and following the birth of an employee's child[.]" 21 V.S.A. §
472(a)(1). The PFLA provides that the "employer shall continue employment benefits[4]
for the duration of the leave at the level and under the conditions coverage would be
provided if the employee continued in employment continuously for the duration of the
leave." 21 V.S.A. § 472(c). Employees on PFLA leave are also entitled to reinstatement
at "the same or comparable job at the same level of compensation, employment benefits,

---

[4] The PFLA does not define "employment benefits."

4

seniority or any other term or condition of the employment existing on the day leave began." 21 V.S.A. § 472(f).

Because "the PFLA is a remedial statute," the Vermont Supreme Court has construed it "liberally to accomplish the Legislature's remedial intent." *Woolaver v. State*, 2003 VT 71, ¶ 14, 175 Vt. 397, 833 A.2d 849 (citing *Town of Killington v. State*, 172 Vt. 182, 191, 776 A.2d 395, 402 (2001)).

In order to establish that a discharge from employment violated the PFLA, a plaintiff must demonstrate that:

> (1) plaintiff was an employee within the meaning of the PFLA, as defined in § 471(2); (2) the employer is an employer under the PFLA, as defined in § 471(1); (3) the employer refused to reinstate plaintiff-employee after PFLA leave; (4) prior to requesting leave the employee had not been given notice or given notice "that the employment would terminate," pursuant to § 472(f); and (5) [the] employee was terminated for reasons related to the leave or the condition for which the leave was granted, as prohibited by § 472(f). Once the plaintiff makes this prima facie case, Vermont's PFLA shifts both the burden of production *and* the burden of persuasion to the employer to prove by clear and convincing evidence that the reasons for termination were not related to the employee's request for leave or the condition for which leave was sought. *Id.* § 472(f).

*Id.*, ¶ 9, 175 Vt. 397, 833 A.2d 849 (footnote omitted).

The PFLA defines an eligible "employee" as "a person who, in consideration of direct or indirect gain or profit, has been continuously employed by the same employer for a period of one year for an average of at least 30 hours per week." 21 V.S.A. § 471(2). In this case, the court must determine whether Plaintiff satisfied the one year continuous employment requirement and thus was an "employee" entitled to PFLA's protections.

### C. The *Woolaver* Exceptions.

In *Woolaver*, the Vermont Supreme Court ruled that whether an individual is a protected "employee" under the PFLA must be determined, in the first instance, in accordance with the individual's status at the time of taking leave. *See Woolaver,* 2003 VT 71, ¶¶ 13, 14, 175 Vt. 397, 833 A.2d 849. *Woolaver*'s approach in this respect is

consistent with that of the FMLA, which also determines employee eligibility for FMLA protections on the date the employee commences his or her leave.[5] It is undisputed that Plaintiff had not been employed by Defendant for one continuous year on January 18, 2010, the date she commenced her medical leave. *Woolaver*, however, mandates two additional inquiries in order to determine Plaintiff's eligibility for PFLA protections.

First, the *Woolaver* court held that the plaintiff's accrued annual and sick leave at the beginning of her period of parental leave counts toward time worked for purposes of PFLA eligibility. *See Woolaver*, 2003 VT 71, ¶ 14, 175 Vt. 397, 833 A.2d 849 ("As long as plaintiff was using accrued leave balances that she had earned, the clock was still running towards the [one year] of continuous employment required for PFLA eligibility[.]"). The court reasoned that this was time the plaintiff had "earned" and to which was entitled even though she was on leave. *Id.* In this case, Plaintiff gains little by this exception because, even by her own calculations,[6] her accrued PTO and RLB time extended only to February 13, 2010, still considerably shy of her one year anniversary date of March 4, 2010.

---

[5] The FMLA provides, *inter alia*, that an employee must work at least 1,250 hours in the previous twelve-month period before he or she is eligible for protection under the Act. *See* 29 U.S.C. § 2611(2)(A). The determination of whether the employee has worked for twelve months "must be made as of the date the FMLA leave is to start." 29 C.F.R. § 825.110(d); *see also Ricco v. Potter*, 377 F.3d 599, 604 n.4 (6th Cir. 2004) (observing that "[t]he determination of whether an employee meets the FMLA's eligibility requirements is made in reference to the date the employee commences his or her leave, not the day the employer takes an adverse action against the employee."). In *Woodford v. Community Action of Greene County, Inc.*, 268 F.3d 51, 55 (2d Cir. 2001), the Second Circuit characterized the determination of an employee's status at the time of taking leave as a straightforward question of law guided by a clear expression of congressional intent.

[6] Defendant disputes Plaintiff's calculations and contends that Plaintiff's accrued leave expired no later than January 25, 2010. This dispute is not material as it does not affect the court's determination of Plaintiff's PFLA eligibility.

Second, *Woolaver* left open the possibility that an employer's policies may alter the general rule that unpaid leave does not count towards the PFLA's one year continuous employment requirement:

> [T]ime spent on unpaid leave would not count towards the thirty hours per week required for PFLA purposes, as long as the [employer]'s personnel policy does not permit the accrual of seniority and other benefits when an employee is on unpaid leave. See *Heibler v. Dep't of Workforce Dev.*, 2002 WI App 21, ¶¶ 9-13, 250 Wis. 2d 152, 639 N.W.2d 776, 780-81 (2001) (determining whether an employee could accrue salary, seniority, and benefits that normally would have accrued during her leave under the Wisconsin Family and Medical Leave Act in accordance with governing provisions of collective bargaining agreement and state administrative regulations).

*Id.*

Plaintiff argues that because the School granted her medical leave through April 9, 2010, and she continued to receive health benefits during that time, she was "essentially an employee on leave during the January 18, 2010-April 9, 2010 period." (Doc. 24 at 2.) She urges the court to apply a liberal construction to the PFLA and hold that an employee's entitlement for PFLA protections should be determined as of the last day of his or her employment.

Defendant counters that it had no policy that would have permitted Plaintiff to accrue seniority, salary, or employment benefits during her unpaid medical leave. To the contrary, the School's policy governing PTO and ELB accrual unambiguously terminates such accruals during any time period when an employee is on approved leave: "[a]ll accruals will stop at the end of the pay period after an approved leave of absence begins." (Doc. 23-9 at 2.) While Plaintiff cites her continued receipt of health benefits while on unpaid leave, she does not further argue that these health benefits "accrued" during her unpaid leave such that they should be counted towards the PFLA's one year employment requirement. In contradistinction to seniority, paid time off, and earned leave, continued health insurance benefits do not in any way extend or count towards an employee's length of service.

7

Finally, this court cannot alter, in the name of liberal construction, the PFLA's clear requirement of one year continuous employment as precondition to the PFLA's protections. *See* 21 V.S.A. § 471(2); *Leno v. Meunier*, 125 Vt. 30, 33, 209 A.2d 485, 488-89 (1965) ("[W]here the meaning of a statute is plain there is no necessity for construction, and the courts must enforce it according to its terms.") (citations omitted)). Nor can the court impose its own views of public policy and ignore the Vermont Supreme Court's unequivocal conclusion that PFLA eligibility is determined at the commencement of the employee's leave, as modified by two exceptions which Defendant has demonstrated beyond dispute are not applicable here. *See Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 80 (2d Cir. 1999) (observing "in a diversity case the federal courts are not free to develop their own notions of what should be required by the public policy of the state, but are bound to apply the state law as to those requirements.") (citation omitted)).

It is Plaintiff's burden to demonstrate that she was entitled to the PFLA's protections. *Woolaver*, 2003 VT 71, ¶ 9, 175 Vt. 397, 833 A.2d 849. After discovery, she has not proffered any evidence that would allow the court to conclude that she had been continuously employed for one year at the time she commenced her leave, even when the court construes her accrued leave in the light most favorable to her. Accordingly, partial summary judgment in Defendant's favor with regard to Plaintiff's PFLA claim is mandated. *See Celotex*, 477 U.S. at 322.

## CONCLUSION

For the reasons stated above, the court GRANTS Defendant's motion for partial summary judgment on Count II of Plaintiff's Complaint.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 11 day of January, 2011.

Christina Reiss, Chief Judge
United States District Court

8